SAVOIE, Judge.
Cecil T. Glasper was charged by bill of information with three counts of distribution of pentazocine in violation of LSA-R.S. 40:967 A. Glasper pled not guilty and, after a jury trial, was found guilty as charged on each count. The trial judge sentenced Glasper to concurrent ten year sentences at hard labor on each count.
Glasper brings this appeal urging four assignments of error:
1. The trial court erred when it allowed the state to ask an impermissible question over defense counsel’s objection.
2. The trial court erred when it allowed state exhibits 1, 2, 3 and 13 to be introduced into evidence over defense counsel’s objection.
3. The trial court erred when it allowed state exhibits 7, 8, 9, 15 and 16 to be introduced into evidence over defense counsel’s objection.
4. The trial court erred when it allowed state exhibits 4, 5, 6, 10, and 11 to be introduced into evidence over defense counsel’s objection.
Assignment of error number one has not been briefed and is thereby considered abandoned. Uniform Rule — Courts of Appeal 2-12.4.
The instant charges derive from three separate drug purchases made by undercover police officers on November 14, 1983, November 22, 1983, and December 1, 1983, respectively. On each occasion, Glasper sold the officers two sets of T’s and Blues, a street name for Talwin (pentazocine) and pyribenzamine.
After each purchase, one of the officers who participated in the purchase tagged the drugs purchased, completed a laboratory analysis request form, and delivered the sealed evidence envelope to Lt. Sam Pruit, who was supervising the undercover operation. Each of the sealed envelopes, with an attached laboratory analysis request form, was received by one of the two Baton Rouge City Police evidence officers and noted in the appropriate log books. Thereafter, one of the evidence officers delivered each sealed evidence envelope to the Louisiana State Police Crime Laboratory where it was assigned an additional identification number. Following completion of the requested chemical analysis, each of the original envelopes, sealed within another envelope supplied by the State Police Laboratory, was returned to the City Police evidence room where it remained until the instant trial.
ASSIGNMENTS OF ERROR NOS. 2, 3, AND 4:
By these assignments Glasper contends that the trial court erred in admitting the purchased drugs, various evidence envelopes and the laboratory analysis request forms into evidence without requiring the State to establish a proper chain of *643 custody.[1] The basis of the complaint is that Lt. Pruit, who received the evidence from the officers who had made the purchases, did not testify at trial prior to admitting these items.
To admit such evidence at trial, the identification can be visual or it can be by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. State v. Gibson, 459 So.2d 1294, 1297 (La.App. 1st Cir.1984).
For admission, it suffices that the custodial evidence establishes it as more probable than not that the object is one connected with the case. State v. Gibson, supra. Moreover, any deficiencies in the chain of custody are properly attributable to the weight, rather than to the admissibility. State v. Tonubbee, 420 So.2d 126 (La.1982), cert. denied, 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983).
In State v. Francis, 345 So.2d 1120, 1128-1129 (La.1977), on rehearing, [cert. denied, 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d. 177 (1977) ] Justices Tate and Dennis, concurring, noted that:
Providing “no circumstance casts doubt on the identity of the evidence introduced with that seized from or near the defendants,” the state- need not call witnesses to prove each link of an unbroken chain of custody preponderantly shown by the sworn testimony of the purchasing officer and the analyzing chemist. Connexity may be preponderantly shown by these witnesses’ identification of the envelopes containing the identified substances and their reasonable explanation from firsthand knowledge of the identifying receipts of those who handled the envelopes between seizure and trial, [citation omitted.]
Review of the record convinces us that an adequate foundation was established by testimony of the purchasing officers, analyzing chemists, and evidence room officers. This allowed the trial judge to conclude that the instant exhibits more probably than not included the contraband which was purchased from Glasper on these three occasions.
• At least one police officer who participated in each purchase testified at trial as to the procedures followed in handling the evidence. Through their composite testimony, they identified each laboratory analysis request form, each small evidence envelope into which the drugs were placed, and each evidence envelope into which the smaller envelope was placed. These identifications were made by recognizing their own and other officers’ handwriting and initials. In addition, all police file numbers on the items matched, and the pills were identical to those purchased from Glasper.
Also testifying were the two Baton Rouge City Police evidence officers who described the procedures by which they receive and handle evidence. Evidence envelopes are either received from officers personally or retrieved from a locked deposit box. One of the evidence officers logged each of these items by file number as it was received. Additionally, they testi *644 fied as to how the items were documented when taken to and retrieved from the Louisiana State Police Crime Laboratory.
In addition, the analyzing scientists with the Louisiana State Police Crime Laboratory testified as to how these items were received and maintained at the laboratory. These items were identified by their state police and city police identification numbers and the initials of the individual experts. Each expert testified as to how the items that he handled were tested, placed back in their container and then resealed with tape.
In view of the foregoing, we find Glas-per’s assignments of error to be without merit.
PATENT ERROR
The defendant received a sentence of ten years at hard labor on each count. This sentence is statutorily incorrect. The relevant penalty provision, LSA-R.S. 40:967 B, provided as follows:[2]
[A]ny person who violates Subsection A with respect to:
!⅜ * ⅝ * * *
(2) Pentazocine shall be sentenced to imprisonment at hard labor for not less than four years nor more than ten years, without benefit of parole, probation, or suspension of sentence; and, in addition, may be sentenced to pay a fine of not more than fifteen thousand dollars.
⅜ Jjt ⅝. ⅜ 5⅜ ⅝
[Emphasis added.]
Since the sentence was not imposed without benefit of parole, probation or suspension, it is an illegal sentence. Accordingly, the case must be remanded to the district court for re-sentencing in accordance with law. La.C.Cr.P. art. 882.
For the above reasons, we affirm Glas-per’s convictions. However, we vacate the sentences and remand for resentencing.
CONVICTIONS AFFIRMED, SENTENCES VACATED AND REMANDED.

. November 14, 1983 purchase:
State Exhibit 1 is the state police evidence envelope;
State Exhibit 2 is the laboratory analysis request form;
State Exhibit 3 is the evidence envelope provided by the field officers, contained within S-l;
State Exhibit 13 is the contents of S-3, including the drugs purchased on that date. November 22, 1983 purchase:
State Exhibit 7 is the state police evidence envelope;
State Exhibit 8 is the laboratory analysis request form;
State Exhibit 9 is the evidence envelope provided by the field officers, contained within S-7;
State Exhibit 15 is the small evidence envelope, contained within S-9;
State Exhibit 16 is the drugs purchased on that date, contained within S-15.
December 1, 1983 purchase:
State Exhibit 4 is the state police evidence envelope;
State Exhibit 5 is the laboratory analysis request form;
State Exhibit 6 is the evidence envelope provided by the field officers, contained within S-4;
State Exhibit 10 is the small evidence envelope, contained within S-6;
State Exhibit 11 is the drugs purchased on that date, contained within S-10.

. This provision was since amended by Acts 1984, No. 753 § 1, to provide for a minimum period of incarceration of seven years at hard labor without benefit of parole, probation or suspension of sentence.